**In the Matter of Edward Huriet FOUTZ, Sr., Debtor.**

**No. 66–BK–697–R.**

United States District Court
W. D. Virginia,
Roanoke Division.

Aug. 30, 1967.

848

Dale Myers, Roanoke, Va., for debtor.

Robert T. Winston, Jr., Kime, Jolly, Winston & Clemens, Salem, Va., for Bank of Salem.

DALTON, Chief Judge.

This case is before the court on a petition of the Bank of Salem, Salem, Virginia, to review, pursuant to section 2(a) (10) of the Bankruptcy Act, 11 U.S.C.A. § 11(a) (10), the order of the referee in bankruptcy denying the Bank's request to set off funds of the debtor, Edward H. Foutz, Sr., on deposit with the Bank against the amount which the debtor owes the Bank by virtue of his being a co-maker on a defaulted note to the Bank.

The facts as stipulated are as follows:

In 1962, the debtor had a checking account in the Bank of Salem, Salem, Virginia (hereinafter referred to as petitioner). By a bookkeeping error in 1962 the petitioner charged a certified check for $425.00 against the debtor's account twice. As a result of its error, the petitioner's records understated the balance of the debtor's account by $425.-00.

In 1965, the debtor was a co-maker with his son on a note payable to the petitioner. The payments were not met and several months before December, 1966, the entire note became due and payable. The debtor then filed a Chapter XIII, wage earner proceeding in this court on December 2, 1966, and listed the petitioner as an unsecured creditor to be paid under the plan pro-ratably with the other general creditors.

Subsequently, the petitioner obtained a judgment against the debtor's son and one other co-maker. Then, in May, 1967, the petitioner discovered the error it had made in the debtor's checking account five years earlier. Thus, since the debtor was still due $425.00 in his checking account, the petitioner, pursuant to section 68 of the Bankruptcy Act,[1] seeks to set off the $425.00 due the debtor from the checking account against the amount which the debtor owes the petitioner because he is a co-maker on the defaulted note. The debtor's trustee seeks to have the $425.00 thus set off turned over to him to be distributed pro-rata among the debtor's general creditors.

On July 13, 1967, the referee in bankruptcy issued his order in the matter stating that the money in question should be turned over to the trustee to be distributed pro-ratably among the creditors on the grounds that it was held in trust for them by the petitioner. The referee stated that the action of the petitioner could not be considered as in the usual course of business and that the petitioner should not gain by its own mistake.

The court upon consideration of the facts which give rise to petitioner's claim finds that the order issued by the referee is incorrect and must be reversed.

It is well settled that generally a bank may set off a bankrupt's deposit against a debt due the bank from the

1. Bankruptcy Act § 68(a), 11 U.S.C.A. § 108(a) : Set-Offs and Counterclaims
(a) In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

bankrupt depositor. Studley v. Boylston Nat'l Bank, 229 U.S. 523, 33 S.Ct. 806, 57 L.Ed. 1313 (1913); In re Cross, 273 F. 39 (2d Cir. 1921). It is also well settled that before a bank can use the bankrupt's deposits as a set-off, the deposits must have been accepted in good faith in the ordinary course of business, Bank of Commerce & Trusts v. Hatcher, 50 F.2d 719 (4th Cir. 1931); Citizens' Nat'l Bank, Gastonia, N. C. v. Lineberger, 45 F.2d 522 (4th Cir. 1930), and that a deposit made for a special purpose known to the bank cannot be appropriated by a bank to its own use as a set-off since it is held as a trust, Twentieth St. Bank v. Gilmore, 71 F.2d 594 (4th Cir. 1934); Union Bank & Trust Co. of Helena, Mont. v. Loble, 20 F.2d 124 (9th Cir. 1927).

Here there is no question that the $425.00 had originally been deposited as a general deposit in good faith in the ordinary course of business to be drawn upon by the bankrupt. Nor is there any doubt that the deposits were made as general deposits.

An unusual factor here is that the petitioner did not discover the erroneous entry made in 1962 until after the debtor had filed in 1966 for a Chapter XIII wage earner plan. The issue is whether the petitioner is entitled to a set-off of the amount due the debtor from the checking account against the amount the debtor owed petitioner because he was a maker on the defaulted note in view of the fact that the error was not discovered until after the wage earner plan petition was filed.

We find that the petitioner was entitled to set off the amount due the debtor from the checking account even though petitioner only discovered the error after the petition was filed. The existence of the error discovered after the filing of the petition should not cut off the petitioner's right to set off the amount due the debtor. This is because a set-off is based on the cross-cancellation of obligations and the obligations still exist despite the bookkeeping error. The presence of the error did not relieve the petitioner of the obligation to pay to the debtor's order on demand. Its only effect was to inaccurately represent on the books the amount due the debtor. Something was still owed him regardless of the error. If the error had not been made and if the money were still in the account at the time of bankruptcy, then the petitioner could clearly set the amount of the deposit off against the note. Here the mere fact of the erroneous entry should not affect that right when the only difference in the two situations is in the statement of the accounts. The bank made the error in good faith and it should not be penalized for its mistake. Mistakes such as this occur frequently both in the banking field and in general among merchants and consumers, though the length of time a mistake goes undiscovered is rarely this long. A creditor whose records are found erroneous after a petition for a wage earner plan has been filed should not suffer the loss of its valuable right to a set-off merely because of a mistake made in good faith.

Other creditors will suffer nothing from the mistake because the only difference between this case and one where there has been no erroneous entry is in the mechanical statement of the accounts. The obligation of the petitioner still flows to the debtor regardless of the error. The general creditors have not been prejudiced and should not realize the benefit of a simple good faith mistake on the part of a bookkeeper in the bank.

Even though the error does not affect the petitioner's right to a set-off, petitioner must still meet the requirement of mutuality as provided by § 68 (a): "In all cases of mutual debts or mutual credits * * *." Here the debtor indorsed the note for the accommodation of his son in order that he might obtain credit from the bank. The debtor, therefore, is a surety on the note and consequently the petitioner, upon default, may collect from the debtor just as he could from the principal debtor.

Thus, we find that the debts were mutual.

No other objections to petitioner's set-off having been presented and no inconsistency or conflict between the provisions of § 68 and the provisions of Chapter XIII having been found, it is therefore adjudged and ordered that the referee's order be reversed and that the petitioner be granted the right to set off the amount of the deposit in question against the debtor's note to the petitioner.

The Clerk will send a copy of this order to the referee and to counsel of record.