**PREFERRED SURFACING, INC.,**
Debtor-Movant,

v.

**GWINNETT BANK & TRUST COM-
PANY, Respondent.**

No. B 75–1287 A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 25, 1975.

C. Edward Dobbs, Huie, Brown & Ide, Atlanta, Ga., for debtor.

William J. Porter, Jr., Chamblee, Ga., for respondent.

## ORDER

JAMES C. HILL, District Judge.

Gwinnett Bank & Trust Company, respondent in the above-captioned matter, appeals to this Court from an order of the Bankruptcy Court entered in this case on May 12, 1975, holding respondent in contempt of court. The issue presented is whether the bankruptcy judge abused his discretion in holding respondent bank in contempt of court for exercising the right of set-off under the facts and circumstances of this case.

The facts are not in dispute. On March 28, 1975, Preferred Surfacing, Inc. (the "Debtor") had one thousand, three hundred eighty-eight and $\frac{98}{100}$ ($1,388.98) dollars on deposit in a general checking account with Gwinnett Bank & Trust Company (the "Bank"). On that same date the Debtor filed his petition in the Bankruptcy Court initiating this Chapter XI proceeding. On April 3, 1975, the Bank by means of set-off applied the aforementioned sum on deposit against the amount of the outstanding indebtedness allegedly owed by the Debtor to the Bank. On April 7, 1975, the Debtor informed the Bank that the set-off was in violation of the restraining order of the Bankruptcy Court entered March 28, 1975, and requested reinstatement of the same. The aforementioned order of the bankruptcy judge was entered in aid of the automatic stay provisions of the Bankruptcy Act upon a finding that it was "necessary to

preserve the present status of said case with respect to all of [the Debtor's] creditors and as to the property and other assets of the Debtor until the First Meeting of Creditors is held." The order enjoined and restrained all persons from seizing or otherwise interfering with any property of the Debtor.

On April 10, 1975, the Bankruptcy Court issued a show cause order directing the Bank to show why it should not be adjudged in contempt by reason of its having seized funds of the Debtor after the filing of the Chapter XI petition and the issuance of the aforementioned order of the Bankruptcy Court. After hearing on this matter the bankruptcy judge found that the Bank

"did knowingly and wilfully act in contempt of court by interfering with property of the Debtor in the exclusive jurisdiction of this Court and by its refusal to comply with a lawful order of this Court enjoining and restraining any interference with property of the Debtor, . . ., it is herewith ADJUDGED that the said Gwinnett Bank & Trust Company is in contempt of court."

The Bank was ordered to establish and maintain a trust account in the name of the Debtor in order to purge itself of its contempt. Failure to do so would result in a two hundred ($200.00) dollar penalty. This appeal followed.

The Bank's alleged right to set-off in this case arises under a promissory note executed in favor of the Bank by the Debtor for the gross amount of one thousand seven hundred forty-five and $^{86}/_{100}$ ($1,745.86) dollars. Said note matured on the same date as the order of the bankruptcy judge was entered enjoining any interference with the Debtor's property, to wit; April 3, 1975. However, the petition for an arrangement under Chapter XI was filed on March 28, 1975. The said note provided that collateral therefor included all balances, deposits and accounts the Debtor maintained with the Bank. The note further provided that upon certain contingencies, e. g. the filing of a bankruptcy petition, the Bank at its option could appropriate and apply toward payment any balances, deposits, and accounts of the Debtor with the Bank. Thus, the Bank set-off the $1,388.98 here in question. The next day the Bank was notified of the pending Chapter XI case.

The questions presented on this appeal are (1) whether the Bank was authorized to exercise its alleged right to set-off against the Debtor's checking account under the facts and circumstances at the time this was done, and (2) whether the bankruptcy judge abused his discretion in holding the Bank in contempt for exercising this alleged right to set-off under the facts of this case. The Court is of the opinion that the Bank had no right to set-off and that it was not error to hold the Bank in contempt for doing so under the circumstances.

Section 68(a) of the Bankruptcy Act, 11 U.S.C. § 108, provides:

"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

In ordinary bankruptcy, a bank may set off a deposit against an unmatured indebtedness even though done after the petition is filed, absent fraud or collusion for purposes of effecting a preference. *See generally* 4 *Collier on Bankruptcy* ¶ 68.02. Basically, the Bank is a creditor to the amount of the note and a debtor to the amount of the deposit. Insofar as not inconsistent with or in conflict with the provisions of Chapter XI, this section is applicable to proceedings under Chapter XI. 11 U.S.C. § 702.

There is some authority in this Circuit, albeit perhaps dictum, that a bank is entitled to a set-off in a Chapter XI proceeding under the circumstances of this case. *First National Bank in Fort Lauderdale v. Davis*, 317 F.2d 770 (5th Cir. 1963); *see also, Tyler v. Marine*

*Midland Trust Co. of New York,* 128 F. 2d 927 (2nd Cir. 1942). However, after an extensive review of numerous court decisions and in light of the promulgation of Rule 11–44, the Court is of the opinion that there was no unilateral right to set-off under the facts of this case.

The general tone of thought on this question was set by Mr. Justice Cardozo in *Lowden v. Northwestern National Bank and Trust Co.,* 298 U.S. 160, 56 S. Ct. 696, 80 L.Ed. 1114 (1936).

"A proceeding to reorganize is not a bankruptcy, though an amendment to the bankruptcy act creates and regulates the remedy. From the fact without more that such a proceeding has been initiated, one cannot know that it will be necessary to have recourse to section 68, 11 U.S.C.A. § 8, which was meant in its enactment to prescribe the rule of set-off upon a distribution of the assets. That stage of administration, or the analogous stage of a revision of the debts, may never be obtained in a proceeding to reorganize, though a petition has been approved and trustees have been appointed. If a plan of reorganization is not proposed or accepted, or, being proposed and accepted, is not confirmed by the court within a reasonable time, the whole proceeding may be dismissed (section 77(c)(7), 47 Stat. 1476); the title to the estate reverting to the debtor. By that time there may even be ability to pay demands as they mature. What is done at the beginning amounts to little more than a provisional sequestration to give protection for the future.

The right of set-off must fit itself to these procedural conditions. It is not susceptible of definition in the abstract without reference to the time or occasion of the controversy or the relation of the suit to the primary proceeding. Irrespective of the acceptance or confirmation of a plan, the trustees must have the power to gather in the assets and keep the business going. . . . The rule to be accepted for the purpose of such a suit is that enforced by courts of equity, which differs from the rule in bankruptcy chiefly in its greater flexibility, the rule in bankruptcy being framed in adaptation to standardized conditions, and that in equity varying with the needs of the occasion, though remaining constant, like the statute, in the absence of deflecting forces." 298 U.S. at 163–165, 56 S.Ct. at 698.

*See also, Continental Illinois National Bank v. Chicago, R. I. & Pacific Ry.,* 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935); *Susquehanna Chemical Corp. v. Producers Bank & Trust Co.,* 174 F.2d 783 (3rd Cir. 1949); *In re Cuyahoga Finance Co.,* 136 F.2d 18 (6th Cir. 1943). As all of these cases recognize, set-offs sanctioned in ordinary bankruptcy are not necessarily controlling in corporate reorganizations. *See In Matter of Penn Central Transportation Company,* 453 F.2d 520 (3rd Cir. 1971); *In re Yale Express System, Inc.,* 362 F. 2d 111 (2nd Cir. 1966). Thus, in railroad reorganizations it would seem to now be well settled that banks are not privileged to elect to satisfy their own claims against the railroad by self help through the remedial device of set-off. *In Matter of Penn Central Transportation Company, supra; In re Central R. R. Co. of New Jersey,* 392 F.2d 589 (3rd Cir. 1968) *aff'g* per curiam, 273 F.Supp. 282 (D.N.J.1967). It has there been recognized that the reorganization court is merely denying resort to a remedy during reorganization. The decision is grounded upon equitable considerations on a finding that the basic purpose of reorganization, continuation of the operation of the railroad, would be frustrated if the banks are permitted to set-off.

In the case *sub judice* the Debtor filed a petition for an arrangement under Chapter XI of the Bankruptcy Act. The Debtor was authorized to continue the operation of its business and management of its property as Debtor-in-Possession. The order of the bankruptcy

judge enjoining and restraining all persons from seizing or interfering with any property of the Debtor was entered upon a finding that it was "necessary to preserve the present status of said case with respect to all of [the Debtor's] creditors and as to the property and other assets of the Debtor until the First Meeting of Creditors is held."

■ Section 311 of the Bankruptcy Act, 11 U.S.C. § 711, provides:

"Where not inconsistent with the provisions of this chapter, the court in which the petition was filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and his property, *wherever located.*" (emphasis added)

This section gives to the Chapter XI court greater jurisdiction than is possessed by the court in an ordinary bankruptcy case. *See* 8 *Collier on Bankruptcy* ¶ 3.01[1].

■ That jurisdiction over property rests on ownership of property, as distinguished from possession. Thus, where a third-party has possession of the property and asserts a substantial adverse claim thereto, the Bankruptcy Court in a Chapter XI proceeding has summary jurisdiction over the controversy. *See generally,* 8 *Collier on Bankruptcy,* ¶ 3.02.

■ Thus, in the instant case on the date of the filing of the Chapter XI petition the general checking account of the Debtor, even though in the possession of the Bank, came within the exclusive jurisdiction of the Bankruptcy Court. Therefore, the Bankruptcy Court was authorized to enjoin and restrain any interference with the property in a summary proceeding. This authority is recognized and promoted by the recent promulgation of Rule 11–44. The rule provides for an automatic stay of "any act . . . to enforce any lien against his [the Debtor's] property." The term lien is used to include any consensual security interest in personal property. *See* Advisory Committee's Note to Rule 11–44. The rule is derived from Section 314, 11 U.S.C. § 714, wherein the Court may "enjoin or stay until final decree any act . . . to enforce any lien upon the property of a debtor." The rule is designed to protect the debtor against harassment and possible frustration of his rehabilitation by prejudicial dismemberment and disposition of his assets before he can obtain the necessary injunctive relief. *See* 8 *Collier on Bankruptcy* ¶ 3.20[3].

■ From the foregoing, it becomes clear that the property here in question came within the exclusive jurisdiction of the Bankruptcy Court at the filing of the Chapter XI petition and that the Bankruptcy Court had summary jurisdiction over the property. The automatic stay provisions of Rule 11–44 as well as the order issued by the bankruptcy judge operated against all creditors, whether they be secured or unsecured, even though a Chapter XI arrangement may not substantially affect secured creditors' rights. The restraining order merely denies resort to a remedy during the pendency of the proceedings. Thus, the Bank had no right to resort to the unilateral, self-help remedy of set-off at the time and under the circumstances of this case. Left open is the question of what treatment should be accorded the Bank with reference to its claim which it has been prohibited from satisfying by set-off during the initial stages of this proceeding.

Since the Court has determined that the Bankruptcy Court had summary jurisdiction to enjoin the right of set-off claimed by the Bank herein, the question remains as to whether the bankruptcy judge abused his discretion in holding the Bank in contempt under the circumstances herein. The Court is of the opinion that there was no abuse.

■ The power of a Court to punish for contempt has generally been recognized as inherent and includes the courts of bankruptcy. *Boyd v. Glucklich,* 116 F. 131 (8th Cir. 1902). Sec-

tion 2(a)(13) of the Bankruptcy Act, 11 U.S.C. § 11(a)(13), invests the courts of bankruptcy with the power to "enforce obedience by persons to all lawful orders, by fine or imprisonment or fine and imprisonment." As has been demonstrated, the bankruptcy order issued herein, as well as the automatic stay of Rule 11–44, operated against the Bank and was fully authorized. There is no question but that the Bank received notice that the Chapter XI petition had been filed and that a stay was in effect. Nevertheless, the Bank insisted in its self-help remedy of set-off. The Bank was then given notice and a hearing on the question as to why it should not be held in contempt. This was all that the Bank was entitled to and the bankruptcy judge did not abuse his discretion in holding the Bank in contempt and ordering it to set up a special trust account in order to purge itself.

Practically speaking, this procedure would seem to be necessarily adequate if the automatic stay provisions of Rule 11–44 are to be effective. Since the Bankruptcy Court has summary jurisdiction over the Debtor's property, wherever located, the automatic stay must operate over that property so that the rehabilitation of the Debtor will not be frustrated. The creditors of the Debtor are entitled to notice of the filing of the petition and of the entry of the stay. If a creditor were entitled to a plenary proceeding, comparable to a turnover proceeding in ordinary bankruptcy, then the purpose of Rule 11–44 would be lost. Rule 11–44 provides a procedure to follow in order to gain relief from the automatic stay. Thus, a hard-pressed creditor is not without a remedy under extraordinary circumstances.

In summary, the Bank had no right to resort to the remedy of set-off at the time and under the circumstances of this case. The Court understands that the ultimate disposition of these funds is still an open question. Nor did the bankruptcy judge abuse his discretion under the circumstances. Therefore, the order of the bankruptcy judge is affirmed.