**In re Glen R. ERICKSON, Lisa A. Erickson, Debtors.**

**Glen R. ERICKSON and Lisa A. Erickson, Plaintiffs,**

v.

**CITIZENS FIRST NATIONAL BANK OF PRINCETON, Defendant.**

Bankruptcy No. 97–82641.
Adversary No. 97–8171.

United States Bankruptcy Court, C.D. Illinois.

Jan. 21, 1998.

set off the funds in this account against any due and payable debt owed to us now or in the future, by any of you having the right of withdrawal, to the extent of such persons' or legal entity's right to withdraw. If the debt arises from a note, "any due and payable debt" includes the total amount of which we are entitled to demand payment under the terms of the note at the time we set off, including any balance the due date for which we properly accelerate under the note. This right of set-off does not apply to this account if: (a) it is an Individual Retirement Account or other tax-deferred retirement account, or (b) the debt is created by a consumer credit transaction under a credit card plan, or (c) the debtor's right of withdrawal arises only in a representative capacity. We will not be liable for the dishonor of any check when the dishonor occurs because we set off a debt against this account. You agree to hold us harmless from any claim arising as a result of our exercise of our right of set-off.

James Brannon, Peoria, IL, for Debtors.

Gregg Grimsley, Carter & Grimsley, Peoria, IL, for Defendant.

### OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

Before the Court is the motion for relief from the automatic stay filed by CITIZENS FIRST NATIONAL BANK OF PRINCETON (CITIZENS) to allow a post-petition setoff against monies held in the checking account of GLEN and LISA ERICKSON (DEBTORS), and the DEBTORS' adversary proceeding against CITIZENS alleging CITIZENS violated the automatic stay of § 362 of the Bankruptcy Code, 11 U.S.C. § 362, when it seized $494.87 earned and deposited into the checking account post-petition.

Prior to the filing of their Chapter 7 petition the DEBTORS opened a joint checking account with CITIZENS. The agreement gave CITIZENS the right of setoff, stating:

You each agree that we may (without prior notice and when permitted by law)

The DEBTORS filed a Chapter 7 petition on July 18, 1997. At the time of the filing of the petition, the DEBTORS had a balance in the checking account in the amount of $1,052.10. On that date, the DEBTORS were indebted to CITIZENS in excess of that amount. CITIZENS was listed as an unsecured creditor on the DEBTORS' schedules and received notice of the bankruptcy on July 29, 1997. On that later date, the balance in the account was $1,086.81. CITIZENS placed an administrative freeze on the account and moved to lift the automatic stay in order to exercise its right of setoff. The DEBTORS opposed the motion and filed their adversary proceeding alleging a violation of the automatic stay. A stipulated order was entered consolidating the adversary proceeding with the motion for relief from the automatic stay as both disputes involved the same facts. After a hearing, the matters were taken under advisement and the parties submitted briefs.

As per the bank statement, the following shows the activity occurring in the account during the period starting the day before the petition was filed and continuing after the

bankruptcy until CITIZENS froze the checking account.

| DATE OF POSTING | CHECK NUMBER | DATE OF CHECK | AMOUNT OF CHECK | DEPOSIT | BALANCE |
|---|---|---|---|---|---|
| 7–17–97 | 2270 | 7–15–97 | $165.00 | | $1,052.10 |
| 7–21–97 | | | | $191.00 | 1,243.10 |
| 7–21–97 | | | | 502.67 | 1,745.77 |
| 7–21–97 | 2272 | 7–17–97 | 61.56 | | 1,684.21 |
| 7–21–97 | 2267 | 7–12–97 | 175.00 | | 1,509.21 |
| 7–22–97 | 2268 | 7–14–97 | 13.00 | | 1,496.21 |
| 7–22–97 | 2274 | 7–20–97 | 25.50 | | 1,470.71 |
| 7–22–97 | 2276 | 7–20–97 | 28.67 | | 1,442.04 |
| 7–22–97 | 2275 | 7–20–97 | 37.98 | | 1,404.06 |
| 7–22–97 | 2269 | 7–12–97 | 49.45 | | 1,354.61 |
| 7–22–97 | 2273 | 7–19–97 | 109.40 | | 1,245.21 |
| 7–23–97 | 2277 | 7–22–97 | 33.00 | | 1,212.21 |
| 7–23–97 | 2262 | 7–11–97 | 91.94 | | 1,120.27 |
| 7–23–97 | 2279 | 7–22–97 | 362.87 | | 757.40 |
| 7–24–97 | 2278 | 7–22–97 | 20.17 | | 737.23 |
| 7–25–97 | | | | 370.00 [1] | 1,107.23 |
| 7–25–97 | 2280 | 7–20–97 | 200.00 | | 907.23 |
| 7–25–97 | 2291 | 7–25–97 | 350.00 | | 557.23 |
| 7–28–97 | | | | 529.58 | 1,086.81 |

■ The DEBTORS contend that a bank cannot setoff a post-petition deposit against a depositor's pre-petition debt. The DEBTORS are correct. Section 553(a) of the Bankruptcy Code preserves a creditor's right of setoff, but only for a "mutual debt owing by such creditor to the debtor that arose before the commencement of the case". 11 U.S.C. § 553(a). The filing of a bankruptcy petition marks the time at which mutuality ceases; any funds thereafter deposited are considered property of the debtor or the bankruptcy estate. *In re Samuels*, 31 B.R. 120 (Bkrtcy.M.D.Pa.1983); *In re All–Brite Sign Service Co., Inc.*, 11 B.R. 409 (Bkrtcy. W.D.Ky.1981).

■ Furthermore, the right of setoff is not self-executing and a bank may fail to timely exercise its setoff rights. *First National Bank in Fort Lauderdale v. Davis*, 317 F.2d 770 (5th Cir.1963). When a bank releases funds in the debtor's account the right to setoff is lost. *Matter of Litchfield Const. Management, Inc.*, 137 B.R. 98 (Bkrtcy.D.Conn.1992); *In re Williams*, 422 F.Supp. 342 (N.D.Ga.1976).

■ CITIZENS suggests that it took appropriate steps as soon as it learned of the DEBTORS' bankruptcy filing and that the DEBTORS were wrong to continue to write checks on the account. As to the first point, a bank can monitor bankruptcy filings by its customers by a variety of methods. A bank can examine the court files daily [2]. It can read daily publications that publish bankruptcy filings, or it can check daily bulletins issued by credit bureaus. Finally, it can await actual notice from the bankruptcy system, with its attendant delay. *See In re Carpenter*, 14 B.R. 405 (Bkrtcy.M.D.Tenn. 1981). If it elects the latter, it cannot resurrect a right of setoff which has been lost in the interim.

Contrary to CITIZENS' assertion, the consequences of not allowing a bank to retroactively setoff against the balance in an account when it learns of the bankruptcy is not so great as to justify deviating from the established holdings that the right of setoff can not reach post-petition deposits and the right can be lost if prompt action is not taken. In a broad sense banks have always had a problem when dealing with the deposit account of a bankrupt depositor during the

1. This deposit was a transfer from DEBTORS' savings account.

2. This Court recognizes that is not an efficient method and that few, if any, banks utilize it.

period between the filing and notice of the bankruptcy, and the problem facing CITIZENS in this case is not a new or unique one for banks.

*In re Bank of Marin*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966) presented one aspect of the problem and the United States Supreme Court held that a bank was not liable to a bankruptcy trustee for pre-petition checks honored post-petition when it had no notice of the bankruptcy filing. The effect of *Marin* is that until a bank receives notice of a depositor's bankruptcy, it can honor checks in a normal fashion as if bankruptcy had not occurred.

The case before this Court presents another aspect of the problem, one with a risk of loss for CITIZENS. Attendant to the right to honor a bankrupt depositor's checks in a normal fashion up until the time it receives notice of the bankruptcy, is the concurrent risk that its right of setoff will be diminished or lost during that period, just as it would be diminished or lost in a non-bankruptcy situation.[3]

■ As to the second point, CITIZENS relies on § 363 of the Bankruptcy Code, 11 U.S.C. § 363, and claims that the funds in the DEBTORS' account were "cash collateral" as defined in § 363(a) and that § 363(c)(2) prohibited the DEBTORS from using the "cash collateral" without consent of CITIZENS or authorization by the court.[4]

Section 363(a) defines "cash collateral" in part to mean:

[C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest. . . .

and §§ 363(c)(1) and (2), which place limits on the use of "cash collateral" provide as follows:

(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and

unless the court orders otherwise, the trustee may enter into transaction, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

There is a simple reason why CITIZENS can not rely on § 363 to prevent the use of "cash collateral" absent consent or court authorization. In a Chapter 7 case, the triggering language of § 363(c)(1) makes it applicable only if the DEBTOR is authorized to operate a business under § 721 of the Bankruptcy Code, 11 U.S.C. § 721. However, the case before this Court is a routine liquidating consumer Chapter 7 case and no business is being operated under § 721. Therefore, § 363 is not applicable.

■ Turning to the DEBTORS adversary complaint, the DEBTORS seek damages under § 362(h) of the Bankruptcy Code, 11 U.S.C. § 362(h), claiming that CITIZENS willfully violated the automatic stay by placing an administrative freeze on the account.

Section 362(a)(7) provides for a stay against:

[T]he setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor.

and § 362(h) provides:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropri-

---

**3.** In this case, contrary to CITIZENS assertion, 6 or possibly 7 of the 15 checks honored by CITIZENS post-petition were written pre-petition.

**4.** This Court notes that the DEBTORS listed the checking and savings accounts at CITIZENS as having a balance of $50.00 in their bankruptcy schedules. The funds were not claimed as exempt.

ate circumstances, may recover punitive damages.

In *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995), the United States Supreme Court had before it the narrow issue of whether a bank's action constituted a setoff and held a bank did not violate the automatic stay where it froze the bank account and immediately filed to have the automatic stay lifted, stating:

In our view, petitioner's action was not a setoff within the meaning of § 362(a)(7). Petitioner refused to pay its debt, not permanently and absolutely, but only while it sought relief under § 362(d) from the automatic stay. Whether that temporary refusal was otherwise wrongful is a separate matter—we do not consider, for example, respondent's contention that the portion of the account subjected to the "administrative hold" exceeded the amount properly subject to setoff. All that concerns us here is whether the refusal was a setoff.

After learning of the bankruptcy filing, CITIZENS placed an administrative hold on the DEBTORS' checking account and promptly filed a motion for relief from the automatic stay. CITIZENS' action can not be considered a willful violation of § 362, as it was following the procedure approved by the United States Supreme Court in order to get a judicial determination of its rights to the funds in the checking account, which the DEBTORS continued to use by both writing checks and making deposits.[5] This is not a harsh result for the DEBTORS, or Debtors as a whole. Issues of this nature can be easily avoided by debtors opening a new bank account for post-petition transactions.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ORDER

For the reasons stated in an OPINION filed this day, IT IS HEREBY ORDERED:

1. That the Motion for Relief from the Stay filed by CITIZENS is hereby DENIED and it is ORDERED to release its administrative hold on all funds in the DEBTORS' account.

2. That the complaint for violation of the automatic stay is DENIED.

---

5. Even at the pre-trial conference, the parties could not agree on the amount subject to setoff.